**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:16cv719**

| | | |
|---|---|---|
| LYNN MARIE JAMIAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 16, 18). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. Following a review of the record, the parties' briefs, and the relevant legal authority, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion for summary judgment.

**I.     Procedural History**

On August 1, 2012, plaintiff protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income. (Transcript of Administrative Record ("T.") 18.) Plaintiff alleged a disability onset date of November 13, 2010. (T. 18.) The Social Security Administration denied Plaintiff's claims initially on October 18, 2012. (T. 18.) The claims were denied upon reconsideration on August 27, 2013. (T. 18.) On October 10, 2013, Plaintiff filed a written request for a hearing. (T. 18.)

On February 4, 2015, a disability hearing was held before an Administrative Law Judge

("ALJ"), in Charlotte, North Carolina. (T. 18.) The ALJ issued a decision finding that Plaintiff was not disabled from November 13, 2010, through the date of his decision, April 16, 2015. (T. 18-30.) Plaintiff requested review of the ALJ's decision. (T. 8-10.) The Appeals Council denied Plaintiff's request for review. (T. 8.) On October 17, 2016, Plaintiff filed the instant action seeking review of the Commissioner's decision. (# 1)

II.     **Standard for Determining Disability**

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in sequence: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant

is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's residual functional capacity ("RFC"). Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not cable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

In his April 16, 2015, decision, the ALJ found that Plaintiff was not disabled under Sections

3

216(i), 233(d), and 1614(a)(3)(4) of the Social Security Act. (T. 29.) The ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

(2) The claimant has not engaged in substantial gainful activity since November 13, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: scoliosis status post shattered knee cap, headaches, chronic obstructive pulmonary disease (COPD), depression, and panic disorder (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5) The claimant has the residual functional capacity to perform less than a full range of light work as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b). The claimant can lift and carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour work; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, knee, and crouch; and occasionally crawl. The claimant must avoid concentrated exposure to fumes, odors, dust, and gases. The claimant must receive one to two step job instructions.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

(7) The claimant was born on February 20, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. §§ 404.1563, 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part

>    404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from November 13, 2010, through April 16, 2015 (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(T. 21-29.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he or she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

5

## V. Analysis[1]

In her second assignment of error, Plaintiff argues that the ALJ erred by assigning great weight to the opinions offered by the State agency non-examining psychologists while affording much less weight to the two consultative psychologists. Pl.'s Mem. Law (# 16-1) at 9-12.

The record, as it relates to Plaintiff's mental examinations, reveals the following: On September 27, 2012, Plaintiff received a comprehensive clinical psychological evaluation from Graham A. Hunter Ph.D. (T. 459-62.) At that time, Plaintiff reported experiencing panic attacks in public places. (T. 459.) Plaintiff also reported that she participated in no social activities and has difficulty being in public or in the company of other people. (T. 460.)

Plaintiff explained that over the course of two years, she had experienced signs associated with depression, such as less interest in activities that she previously enjoyed, decreased interest in sexual activity, reduced sleep, reduced appetite, and frequent tearfulness. (T. 460.) Plaintiff also explained that she has "extreme difficulty" with leaving the house and has been unable to function in the workplace since about 2010. (T. 460.) Plaintiff noted that she had previously been involuntarily committed following an attempt to commit suicide. (T. 460.) Plaintiff further noted that she had been treated for depression and anxiety in the past. (T. 460.)

Dr. Hunter described Plaintiff's affect as tearful and noted that she was tearful throughout most of her interview. (T. 461.) Dr. Hunter diagnosed Plaintiff with major depressive disorder, moderate; panic disorder with agoraphobia; and alcohol dependence. (T. 462.) Dr. Hunter determined that Plaintiff's global assessment of functioning ("GAF")[2] was 45.[3] (T. 462.) Dr.

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] GAF scores, ranging from 0 to 100, rate social, occupational, and psychological functioning of adults. Helms v. Berryhill, No. 3:16CV189, 2017 WL 3038154, at *6 (E.D. Va. June 30, 2017).

[3] A GAF score of 41 to 50, as in this case, means that the individual has serious symptoms or any serious impairment in social, occupational, or school functioning. Gilliam v. Berryhill, No. 2:16cv00009, 2017 WL

Hunter found that Plaintiff had a "limited ability" to relate to others, including potential coworkers and supervisors because she was frequently tearful and avoids public settings. (T. 462.) Dr. Hunter opined that Plaintiff was "unlikely" capable of tolerating the stress and pressure associated with day-to-day work. (T. 462-63.)

The ALJ gave "little weight" to Dr. Hunter's opinion on the basis that it was inconsistent with Plaintiff's ability to live with a roommate and regularly communicate with friends and family over the phone. (T. 26.) "Great weight" was given to Dr. Hunter's opinion that Plaintiff could understand, retain, and follow instructions and is able to sustain attention and perform simple repetitive tasks. (T. 26.) Dr. Hunter's opinion that Plaintiff had a GAF score of 45 was given "little weight" because the ALJ noted that GAF scores only reflect mental status on the day of the score and do not give an overall picture of a claimant's longitudinal mental health. (T. 26.)

On August 22, 2013, Plaintiff was evaluated by Karen H. Crane, PsyD. (T. 490-94.) At the time of her evaluation, Plaintiff reported suffering from anxiety and depression for "a long time." (T. 490.) Plaintiff also reported suffering from panic attacks "quite a lot." (T. 490.) Plaintiff said that she felt sad and down on most days. (T. 490.) Plaintiff explained that she feels "very" anxious around people and rarely leaves the house. (T. 490.) Plaintiff admitted that she took a shot of vodka in order to get out of the house for her evaluation. (T. 490.) Plaintiff reported that her anxiety had been at the current level for two years. (T. 490.) Plaintiff also reported she had no contact with her adult children and admitted she does not really deal with others. (T. 491.) Plaintiff explained that she last worked in the beginning of 2010. (T. 491.)

Dr. Crane determined that Plaintiff's mood was depressed and anxious, even though Plaintiff denied suicidal and homicidal ideation/plan/intent. (T. 491-92.) Dr. Crane diagnosed

1613163, at 3 n.6 (W.D. Va. May 1, 2017).

Plaintiff with panic disorder and agoraphobia, major depressive disorder, and rule out alcohol abuse. (T. 493.) Dr. Crane determined that Plaintiff could understand, retain, and follow simple instructions. (T. 493.) Plaintiff could also sustain attention to perform simple and repetitive tasks. (T. 493.) Dr. Crane opined Plaintiff has "[s]ignificant problems" with social interaction, which would interfere with her ability to relate to coworkers and supervisors. (T. 493.) Dr. Crane further opined Plaintiff's coping ability appears limited, and this would negatively impact her ability to handle work-related stresses. (T. 493.)

The ALJ gave "some weight" to Dr. Crane's opinion. (T. 26.) Dr. Crane's opinion that Plaintiff can understand, retain, follow simple instructions, and sustain attention to perform simple and repetitive tasks was given "great weight." (T. 26.) The ALJ gave "little weight" to Dr. Crane's opinion that Plaintiff has significant problems with social interaction that would interfere with her ability to relate to coworkers and supervisors, and Plaintiff has a limited ability to handle work-related stresses. (T. 26.) The ALJ concluded that these findings were inconsistent with Plaintiff's ability to live with a roommate and regularly communicate over the phone with friends and family. (T. 26.)

On October 9, 2012, Nancy Lloyd, Ph.D., a State agency medical professional conducted a psychological assessment by way of a record review. (T. 78-92, 93-107.) On August 27, 2013, Ben Williams, Ph.D., made a psychological assessment by way of record review. (T. 110-128, 129-146.) Both mental health professionals concluded that Plaintiff could remember simple instructions and work procedures. (T. 27, 142.) The ALJ gave the opinions offered by both professionals "great weight." (T. 27.)

The Regulations provide as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration: (1) length of treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); see Cohen v. Berryhill, ___ F. Supp. 3d ___ , 2017 WL 3641611, at *2 (D.S.C. Aug. 23, 2017). As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. §§ 1527(c)(1), 416.927(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013).

At the outset, the Court notes that Plaintiff has not cited and the Court is not aware of any mental health treating source opinions for consideration.[4] Moreover, as Plaintiff argues, it is evident that the ALJ gave the greatest weight to the opinions offered by the State agency record reviewing medical professionals, despite the fact that Plaintiff had two consultative evaluations.

In her brief, the Commissioner argues that "[i]n appropriate circumstances, the opinions of State agency consultants may be entitled to greater weight than the opinions of treating sources." Def.'s Mem. Supp. (#19) at 15. The Court agrees with the Commissioner, but concludes that this is not one of those "appropriate circumstances." In this case, the opinions offered by the State agency record reviewing professionals were used to undercut both consultative examiners who met with and evaluated Plaintiff. As outlined above, the opinions offered by the consultative

---

[4] The Commissioner explains there was no medical opinion from a treating psychiatrist before the ALJ, and that this information was actually before the Appeals Council. Def.'s Mem. Supp. (# 19) at 16.

9

examiners were similarly severe. For example, with respect to limitations imposed by Plaintiff's mental health conditions, both Drs. Hunter and Crane opined that Plaintiff suffers with panic disorder with agoraphobia.[5] (T. 461, 492.) Dr. Hunter concluded that Plaintiff had a "limited ability" to relate to others (T. 461), and Dr. Crane concluded that Plaintiff had "[s]ignificant problems" with social interaction. (T. 492). In the face of this compelling evidence, the ALJ found that Plaintiff could live with a roommate and communicated by phone with family and friends. (T. 25.) The ALJ's rationales are flimsy, at best.

In sum, the rationales given for discounting the opinions offered by Drs. Crane and Hunter are legally insufficient, and the ALJ's evaluation of the medical opinion evidence fails to comply with the Regulations. Therefore, remand is warranted.[6]

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 16) is GRANTED, and this case is REMANDED for further proceedings. The Commissioner's motion for summary judgment (# 18) is DENIED.

Signed: December 8, 2017

Dennis L. Howell
United States Magistrate Judge

---

[5] Agoraphobia is characterized by the "intense, irrational fear of open spaces, characterized by marked fear of venturing out alone or of being in public places where escape would be difficult or help might be unavailable." Adkins v. Astrue, No. 3:10CV60, 2010 WL 5825428, at *5 n.7 (E.D. Va. Sept. 28, 2010) (citation omitted).
[6] Plaintiff raises two assignments of error. See Pl.'s Mem. Law (# 16-1). Because Plaintiff has established that she is entitled to remand on the second assignment of error, the Court need not address the first.